RIVER GAS COMPANY, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as River Gas Co. v. Pub. Util. Comm. (1982),
69 Ohio St. 2d 509.]

(No. 81-742—Decided March 3, 1982.)

*Messrs. Jones, Day, Reavis & Pogue, Mr. Paul T. Ruxin, Mr. Richard D. Avil, Jr.* and *Mr. Charles M. Kennedy,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Ms. Marsha Rockey Schermer,* for appellee.

*Per Curiam.* The sole question presented for resolution herein is whether the commission has engaged in unlawful, retroactive ratemaking. Appellant argues that "the proper treatment of supplier refunds must be determined by the tariffs in effect when the service to which the refunds relate was rendered." To do otherwise, would, according to appellant, constitute an illegal action on the part of the commission. For the reasons stated below, we disagree.

It is axiomatic that before there can be retroactive ratemaking, there must, at the very least, be *ratemaking.* We are not convinced that the commission's actions at issue herein constitute ratemaking as that term is customarily defined. In considering a case arising under the fuel cost adjustment clause of an electric light company, pursuant to R. C. 4905.301, we stated, "[a]t the outset, a distinction must be recognized between the statutory rate-making process involved in establishing fixed rate schedules, and the statutory procedure governing variable rate schedules under the fuel cost adjustment procedure. In the normal instance, a utility desiring to establish a rate, or change an existing one, must file a written application with the commission pursuant to R. C. 4909.18. The function of the commission is to determine the justness and reasonableness of the proposed rates before they become effective, and to fix lawful rates in accordance with the statutory rate plan. * * * Once computed, a schedule

of the rates approved by the commission must be filed with the commission under R. C. 4905.30. The utility is admonished, by the provisions of R. C. 4905.32, that it may not charge rates which differ from those previously approved and filed with the commission.

"In contrast, the fuel cost adjustment provisions of R. C. Chapters 4905 and 4909 represent a statutory plan which authorizes a utility to pass variable fuel costs directly to consumers. Rates are thereby varied without prior approval of the commission, and independently from the formal rate-making process incorporated in R. C. 4909.18 and 4909.19. * * * ." *Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 57 Ohio St. 2d 78, 82-83. See, also, *Ford Motor Co.* v. *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 142, at 151. Notwithstanding the fact that the commission may refuse to permit a flow-through of gas costs under certain prescribed conditions[7], it does not appear that application of the UPGA constitutes ratemaking in its usual and customary sense.

Assuming that the commission engaged in ratemaking in this cause, the question remains as to whether such ratemaking was retroactive. Appellant argues, specifically, that [t]he commission's retroactive application of the UPGA rule was unlawful, and must be reversed." In support of its argument, appellant relies, primarily, upon this court's decision in *Keco Industries* v. *Cincinnati & Suburban Bell Tel. Co.* (1957), 166 Ohio St. 254. That reliance is misplaced. In *Keco,* the court was confronted with a situation where a *consumer* was suing for restitution of amounts collected under a commission approved tariff which was later determined to be unreasonable and unlawful. There, we held, at page 257, that an action for restitution would not lie, since a "utility must collect the rates set by the commission." In this case, we are not confronted with a situation where a customer is suing for a return to it of

[7] "The public utilities commission may not at any time prevent or restrain such costs as are distributable under this section from being so distributed, unless the commission has reason to believe that an arithmetic or accounting inaccuracy exists with respect to such a distribution or that the company has not accurately represented the amount of the cost of a special purchase, or has followed imprudent or unreasonable procurement policies and practices, has made errors in the estimation of cubic feet sold, or has employed such other practices, policies, or factors as the commission considers inappropriate." R. C. 4905.302(E).

the supplier refunds. Instead, the commission has determined that, in calculating the gas costs which may be recovered, prospectively, from appellant's customers, it is not only appropriate but also required that the amount of supplier refunds which were received after the date the UPGA was incorporated into appellant's tariffs be deducted. With this we find no error.

Moreover, it is undisputed that appellant's previous tariffs have been cancelled and that its current tariff, the only "rates set by the commission" still extant, includes the UPGA. The UPGA does not differentiate between supplier refunds on the basis of the period to which they relate.

Before this court will disturb a finding and order of the commission, it must appear from the record that the commission's determination is manifestly against the weight of the evidence and so clearly unsupported as to show misapprehension or mistake or willful disregard of duty. *Ford Motor Co.* v. *Pub. Util. Comm., supra; Franklin Co. Welfare Rights Org.* v. *Pub. Util. Comm.* (1978), 55 Ohio St. 2d 1.

The order of the commission, being neither unreasonable nor unlawful, is hereby affirmed.

*Order affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

LOCHER, J., dissenting. R. C. 4905.32 provides, in pertinent part: *"No public utility shall charge,* demand, exact, receive, or collect *a different rate,* rental, toll, or charge for any service rendered, or to be rendered, *than that applicable* to such service *as specified in its schedule* filed with the public utilities commission *which is in effect at the time.*

*"No public utility shall refund* or remit directly or indirectly, *any rate,* rental, toll or charge *so specified or any part thereof* * * * ."* (Emphasis added.) This provision should lead to a straightforward result in this case. That is, when appellant's rates, were set before 1969, appellant and its customers struck a bargain. Appellant accepted the risk of an increase in gas prices and its customers accepted the risk of a decrease. Common sense, the principle of freedom of contract

and R. C. 4905.32 require that we and the commission leave the negotiated risks as we find them.

Similar reasoning applies to the interest on refunds received under the 1969 ordinance. Appellant's customers did not bargain for interest. Therefore, they should not receive it.

Accordingly, I would reverse the order of the commission because it is neither reasonable nor lawful.